Good morning, Your Honor. My name is Peter Furst, and I'm here on behalf of Corey Kwan. May it please the Court. The record is clear in this case that this trial began well beyond the statutory period under 3161. In fact, it was more than four times the 70 days that is set by statute. In my brief, I attempted to set forth to the Court the various continuances that were had during the pendency of the case. And during that time, there were very few references to the reasons for the continuances, which I suggest to the Court is a violation of the statute that whenever there is a continuance where there is excludable time. I'm sorry. So the government will tell us that they believe you've waived this, that Kwan's waived this by withdrawing the motion. What's your response to that? My response to that, Your Honor, is linked to my argument that this was a case where there was – Kwan did withdraw his motion to dismiss based on a speedy trial-like violation. That's correct, Your Honor. So the issue was not presented to the district court? No. And I'm suggesting to the Court – But not because of the defendant's voluntary decision to withdraw the motion? Because I'm suggesting to the Court that it wasn't voluntary and that there was an ineffective assistance of counsel argument. That's a different claim. Okay. If you want to move on to the ineffective assistance – I will, Your Honor, then. Okay. That's fine. But that's not the claim of a violation of the Speedy Trial Act. You're not raising that claim, then? Well, I'm suggesting, Your Honor, that the reason that the issue was not preserved was because the attorney who represented – That's an ineffective assistance of counsel. Then I – That's the claim you're arguing now? That's the claim that I'm arguing. You're not arguing a violation of the Speedy Trial Act in itself? In and of itself. In the court on appeal. You're only arguing as a part of your ineffective assistance of counsel. I will reframe my approach, Your Honor. Okay. The fact of the matter is that the attorney for Mr. Kwan at the time withdrew the motion in a manner which is totally inexplicable because when – You know, let me just tell you, the problem with that issue is, as you know, we normally decide those ineffective assistance cases in a collateral proceeding so that there can be a hearing. And, for instance, we don't know from this record what discussion there was between counsel and client. Whether client said to counsel, I don't care about Speedy Trial Act violations. Get rid of that. I want to go to trial right now. Forget that claim. But I'm suggesting to the court that the proceedings with respect to what happened at the time of trial with the withdrawal of the Speedy trial is complete enough for this court to be able to make that determination because it's clear that her decision to withdraw that motion was made instantaneously on the spot. She responded. She made the motion. And then when the court said that she couldn't get the daily record, she said, then I'm going to withdraw the motion. There's no chance that this court could find that there was a discussion where the defendant agreed or disagreed with it because this wasn't something where she came in subsequently and said, I made the motion last week or last month, and I've made the decision to withdraw it. What happened was is that she hadn't even made the motion. She made the motion orally. After a colloquy with the court, she then withdrew the motion. There was no discussion with the client. There's no way that he could have consented to that or even knew what it meant. How do you know that before they went to court, she didn't say to him, I'm going to make a motion for Speedy trial, but unless I can get it right away, you have to decide whether we can withdraw. We don't know what went on between the client and the lawyer. We don't know that for sure, Your Honor, but under the circumstances of the presentation of this case, it doesn't make sense that that would have happened because she, in fact, made the statement at that point that she should have made it another time. She didn't make it another time. And now she's doing it. And it was clear from the record that she made the decision to make that motion while she was before Judge Jenkins just before trial began. There is no indication that there was any intent on her part prior to that. In fact, she acknowledged the fact that she should have made the motion and then made the motion orally. It wasn't even one that was made in writing. So I'm suggesting to the court that there's no way that the defendant could have had an opportunity to discuss the pros and cons of withdrawing the motion that had not even been contemplated before the colloquy between counsel and Judge Jenkins. And this is a motion that even Judge Jenkins had suggested rather strenuously, maybe strenuously is hard, but he repeatedly said, this has gone beyond the statutory period. This case may be dismissed. Are you going to make this motion? He essentially asked the defendant's counsel, do you want to make this motion? It was then that she made the oral motion on the speedy trial grounds. And then with the ---- Judge Reinhart said, but there may have been a reason for that. Part of her calculus may have been, look, even if I gain a dismissal, there's no requirement that it be with prejudice. I understand. The government could start all over. This entire process could be delayed, and I've got a client that wants to be tried right now. I understand. I do understand that, Your Honor. But the problem is ---- It may have been a curious situation where the way to get a speedy trial was to not move for one. That's true, Your Honor, except that there was at least a sufficient indication from the trial judge that, in fact, this case might be dismissed. Anything about prejudice, with or without? Your Honor, I think that in the posture that they were in, the ---- well, my suggestion is that the strategy at that point was you have a chance to get this case dismissed. We'll deal with the issue of whether it's with or without prejudice later. But the fact of the matter is there was no chance that she was making that calculus. Since she did everything, she was essentially shooting from the hip with respect to the speedy trial motion. Was your client on bond at that time? I believe he was, Your Honor. I honestly don't remember, and I apologize for that. I don't remember that. But he was before the court. He was ---- He might not have wanted to speedy the trial if he was that large, I suppose. I mean, it wouldn't have been as serious as if he had been locked up, right? Correct. Correct. But the situation is that when you're faced with the possibility of having a case with all these serious charges pending against you where the court is essentially saying to you that there's a fairly good chance that this case might be dismissed, and then you make the decision on a momentary basis and then withdraw it on a momentary basis, it's almost impossible to contemplate how the, number one, that she used that as a strategy unless she was being ---- not being very forthright with the court, which I don't think the record reflects. And I don't think that the defendant could have had any chance to reflect upon the propriety of withdrawing this motion that had just come up when he's being told, you might very well get what you're asking for here. So I'm suggesting that that's ---- that there was the ineffective assistance in that point because the case could have been dismissed. And I think that as a trial strategy, there's very few situations where you would actually opt for perhaps it will be with prejudice and perhaps without prejudice. Here's a chance to have the case dismissed, deal with the other issue later. I ask that I reserve time for any further, for any rebuttal. Thank you, Captain. May it please the Court. Good morning. I'm Eugene Olowski. I've been appointed to represent Mitchell Chang, the appellant. I want to address the sentencing issue first. Mr. Chang contends that the district court made a mistake in denying him a two-level role reduction under 3B1.2. And the basis of the mistake was that the judge mixed up the two defendants. They're both Asians, Mr. Kwan and Mr. Chang. The sentencing occurred about six months after the verdict. And the government's response is that it admits, it conceives that the district court judge did make a factual mistake and did mix the guys up. But the government says first that it doesn't ---- it's not an important mistake and besides the judge really saved it because he sentenced Mr. Chang based on something else that didn't take into account the confusion. Let's suppose that the district judge had said, I remember this case distinctly and I do recall that one of the defendants made some visits to the bar and the other one didn't. But they were both bound up in the same enterprise. And while there may be some slight differences in their culpability or responsibility, I don't think it's enough to depart as to one. Would that have been sustainable? Judge, I think it would have been. It would certainly be quite different from this case because let me explain why. There are really, if you boil down the evidence and in the briefs, you'll see there are six main events that are contacts between the defendants and the bar. One occurs on January 2nd, 2000. Both fellows go into the bar. They visit the bar. Right. Okay. January 3rd, Quan comes back. The victim tries to bargain. January 4th, Quan pokes his head in, ducks out because there's a cop inside. That's two. January 14th, 3, Quan comes back to the bar. Again, tells Ms. Doe, I'm going to be the boss of this place. And because Mr. Chang had come on the 10th, and I'll get to that one, he says. We don't know who delivered the kumquat tree. Yeah, that's true. That's at the end of the train. But just let me say this. Don't give Chang any money. Give it to me. I'm going to be the boss. That's a big one because if you're confused on that, then you're confused about who the boss is. February 6th, Mr. Quan comes back. Doesn't have any contact with her, but he's seen on the surveillance camera that she buys. On Chang's side of the scoreboard, he comes back on January 10th. And the testimony there is a little equivocal, but basically he says, can you lend me $200? She says, no. Can you lend me $100? She says, no. He leaves. He comes back. He says, look, can you give me $50? And she goes, well, you've got to promise to pay me back. And he goes, okay. And then, of course, he doesn't pay her back. And she. What was this? Was the sentencing range the same for both? Yes. It was level 20 at that time under the guidelines. What was the range? 33 to 41. Okay. And Chang got 41. Yes. And your client got 34. Chang is my client. Mr. Chang is my client. He's the one who got 41. Mr. Quan got, I think, 33. Now, what happens, judges, if you look at the score being 4 to 1, Quan to Chang, what happened with the judge is that he gave two of Quan's to Chang. That's what I was. And now it's 3 to Chang. Because, and particularly, he's got the January 14th one on Chang where he thinks Chang is saying don't give Quan any money, but it's the other way around. So if you're thinking it's 3 to 2 and you're the district judge and somebody makes a motion for a minor role, of course you're going to say exactly what this judge said, which is, A, no, and, B, you're really bugging me because you're minimizing your own role, which is exactly what this judge said. And this is why Mr. Chang gets hammered. They're both in criminal history category 1. If he had gotten the two additional levels, he would have been down. It would have been 27 to 33. If he had gotten 27, he'd be out by now. So that is why the mistake on its own, I think, is a very, very important one. Plus there's also the appearance, which doesn't seem to bother the government in this case, which is the appearance of just mixing these two guys up and not sentencing them on their own merit. I mean, I know people argue about whether the guidelines should take the individual judge out of the sentencing decision. I don't think anybody thinks it's a good idea to take the individual defendant out of the sentencing decision. And that's what you would do if you said, oh, who cares? You made a mistake. So now the government's response is, well, wait a second. The judge didn't rely on the confusion. The confusion didn't really play a role in the sentence because the judge specifically said on January 2nd, first day, they're both equally culpable. They both went in. They both tried to shake her down. That's the end of it, so that's the sentence, and don't get me my role. The problem with the government's response is that had the district court done that, and if that is the basis for upholding the sentence, it's wrong. It's a legal mistake because, as I point out, the introductory comment to the guidelines says, a role determination is to be made based, okay, on the whole conduct of the offense plus on relevant conduct. And there are – and I should have cited it to help the court. But the court does have cases where it's actually reversed denials of role reductions where the district court failed to consider all the relevant conduct. Was everything else about their background pretty similar, and so that would account for the discrepancy between your client getting some more time than Mr. Kwan? Judge, you know, I don't think so, but it's hard for me to make the determination because I can't tell. I mean, if he said they were equally culpable at first and then gave your client more time, it looks as if he thought he was a more aggravated offender or something. I understand. I think the district court was going off of the fact of just the conduct. I don't think the district court was trying to compare their backgrounds, at least the way the record reflects it. Instead, I think the district court was focused on the conduct. And I think the problem under the case is – and if I were better, I would have given the court the cite to the United States against Demers, which is 15 Fed 1381, which is one of those denials, you know, of a reversal of a denial for failing to give a role reduction by considering all the relevant conduct. The case on this point would be more difficult if the sentences had been reversed, right? It certainly would present a little bit more of a problem. But just to look at it on its own, even without comparing it, I think that really the judge reacted to Mr. Chang's argument that he wasn't as involved and accused him of minimizing his conduct. And the lawyer tried to tell the court, and the court just wouldn't have anything of it. And so I would say that based on the record, Mr. Chang does ask that the court be remanded for resentencing. He believes that the record is clear enough that if this court were so inclined, especially given how far into his sentence he is, the court might be able to actually remand to the district court with directions to give the two-level role reduction and then let the district court simply make the inherently factual determination of where in the guideline range, the new guideline range of 1827 to 1833, where you might put Mr. Chang. And he would make that request. As far as the substantive arguments, I've got – there are a few issues, but I've only got limited ammunition and time. So let me go to the – to one of the main evidentiary issues, which is if you go back and you read the transcript of this trial, it's testimony after testimony about the victim's state of mind. The victim was afraid. The victim thought they were gang members, although she called – she said that she thought they were with the black society. The nub of the disagreement on appeal between Mr. Chang and the government is that the government is saying, you know what, the indictment did charge a completed extortion, and the victim's state of mind of fear, belief, whatever, is perfectly relevant. The stuff came in perfectly okay. Mr. Chang is saying now, no, look, it was really a mistake. They goofed. If you look at the indictment, it doesn't have a completed extortion. It's an attempt and a conspiracy, period. And when you have an attempt, this court has been very clear that the victim's state of mind is an importance in an attempt. Why? Well, because if I try to extort an undercover agent or I try to extort, you know, a Wonder Woman or one of Charlie's Angels, and she's not afraid, in fact, she beats me to a pulp, it's not a defense to the attempt case, because what matters is what I did and what I intended, not how the victim reacted to it. Here, the court flipped it the other way around, and you have the victim repeatedly, repeatedly, cumulatively testifying about her fear of the defendants. She was afraid of the defendants even before they came up to her because she thought they were in a gang. She was ‑‑ and you'll see the repeated references to her fear in the trial. There was another aspect of her state of mind which came in, which was her belief that they were members of the black society, and the government says, well, you know, that evidence really didn't really do much damage because it didn't come in in a way that the jury would really understand. The problem is in the opening, the government, the AUSA, said she feared them because she knew them by reputation to be gangsters. Now, on her direct, she never said gangsters, but she said three times, and when you look at the sites in the government, the government's excerpt of records, which is a supplemental, 67, 72, and 82, the full Q&A, you pick it up. Question, why did they attract your attention? Answer, because they're people from the black society. This is before they came up to her. Question, why were you afraid of them? Well, because they're with the black society. Another question is, why did you go outside to talk to Quan? Well, people would be scared if the black society would be overseeing the place. So I would say that from the way the testimony came in, it would be hard for the jury to think that being in the black society would be a good thing. It's true that the AUSA didn't focus on it, didn't hammer away at the black society gangster thing in its closing, although it did hammer away at the state of fear issue in its closing. I'll try to reserve the last 30 seconds for any last-minute squawks, but thank you. Thank you, counsel. Good morning. I'm Amber Rosen, and I represent the United States in this matter. Ms. Rosen, you're an assistant United States attorney, right? Yes, I am. Can we reflect that on the docket sheet? It lists her as if she's a private lawyer. Go ahead. Yeah, I don't think the government is paying these days for private attorneys. Your Honor, the defendant, Chang, is arguing that the victim's fear in this case, any evidence that he was in a gang and any evidence of the kumquat tree should be excluded. And yet to exclude those would be to exclude the means by which he tried to commit this crime, the means which enabled him to be successful in trying to commit this crime, the efficacy. That would be the gang testimony. And, in fact, one of the extortionate demands that he made in the case, the kumquat tree. So let me start with the victim's fear, because I want to make a few points that aren't in my brief or at least aren't emphasized in the brief. And the first is that, and I want to make this argument assuming for argument's sake that only conspiracy and attempts were charged, because I think that really, even if that's so, that this evidence all comes in. The first is that the defendant in the district court did not make any objections to the victim's fear being relevant to the case. In fact, Kwan's attorney, before the trial started, agreed that the victim's fear at the time of the offense would be relevant, and Chang's attorney did not take any exception to that. In addition, in the midst of the trial, Chang's attorney objected to additional witnesses testifying about the victim's fear on cumulativeness, and the district court specifically said, now you are objecting not on relevance but on cumulativeness. Is that right? And he said, right. So I think really that the fact that it's somehow not relevant to the charges has been waived. But in any event, of course, it's very relevant. The second element, fear, or trying to instill fear in the defendant is the very means by which an extortion is committed. And so the defendant's, the fact that the victim is afraid of the defendant is crucial to an element of the crime. It's not only evidence of the defendant's intent, but of course one can try to prove an attempt or conspiracy to commit a crime by proving as much as they can of the substantive crime, and the victim's fear is, of course, an element of the substantive crime of extortion. And it goes really to the heart of the matter. Can we talk about sentencing? Sure. Let me move on to sentencing. My arguments aren't dissimilar to what Mr. Olofsky said they would be. That is to say the district court at the sentencing did confuse some of the conduct as to which was done by Mr. Chang and which was done by Mr. Kwan. I would just note that at the end of the trial, of course, the trial court had reiterated the evidence and got it exactly right as to both defendants. However, the reason that it shouldn't cause this court to remand for resentencing is that in terms of determining the minor role, the court specifically said, look, they were both involved in certain aspects of the crime,  And that explains the 41 months for Chang and 34 months for Kwan, if not the confusion. Well, the district court said that he was sentencing Chang to the high end of the guidelines because he showed Because he thought he was Kwan. No. Well, that's not what the court said. What the court said was he showed a lack of remorse and he wasn't taking responsibility for his conduct. Specifically, I have, he said Did Kwan show remorse? To tell you the truth, Your Honor, I don't recall exactly. He did not get the two points for acceptance of responsibility. And I did not pay as close attention to Kwan's sentencing since Kwan has not raised any sentencing error. What the court said, though, was that it's been reiterated here that for him, Chang, it was the wrong place at the wrong time, and that's significant to me because I fully believe that is completely inconsistent with remorse. The other aspect, so it didn't have to do with the extent of his conduct. If it's correct that Chang made the one visit to the bar and the other thing Yeah, two visits. And all of the revisits, the sort of bargaining for extortion kind of thing and perhaps even the delivery of the kumquat tree, it's just inconceivable how the confusion of the two didn't impact the sentence. Well, that gets to the second reason that the court gave the high end, which was the understatement of Chang's criminal history. He had had many brushes with the law, many, many arrests for various assaults and different offenses like that, which Kwan did not have the same extent of a criminal record. And so that and Chang's lack of remorse went specifically to the district court's high end. But they were both in the same bracket. They were both in the same bracket. And the court also – I mean, what – I think one thing that's significant is having confused the conduct, it's not as though the court gave Kwan a minor role. In other words, if that had been so significant in determining how these defendants should have been sentenced or in grant – I mean, really all that Mr. Olofsky has objected to is the minor role. He admits that in his reply brief, because we talked about where within the range and he says, well, that's irrelevant. We're not raising that. We're just complaining about the court's error with the minor role. Well, if the conduct of the defendants after January 2nd had been so central to the court's decision about whether to grant that role reduction or not, then presumably the court would have given it to Kwan, and it didn't. I think what the court was saying is, look, you can – Did Kwan move for minor role adjustment? I'm not sure. I would have to double check, and I could do that and submit it to the court later. I can't remember at this point. I'm sorry. The court. So you're right. That may not have been an issue. I'm not sure. It may have been. But in any event, I think really what the point is, is that subsequent conduct didn't really make much difference to the court because it viewed the greatest aspect of the conduct of having occurred on January 2nd. And I think that's similar to any kind of conspiracy. I don't think it means the court didn't look at the whole course of conduct. It was just saying this was the primary and major focus of it, and the fact that you were equally involved in these puts you out of a qualification for minor role reduction. I'm going to go back to some of the evidentiary rulings, unless the court has more questions on the sentencing. We're always happy to have our time back. That's okay. Does the court not want any further argument on any other issues? It's your time. You can use it as you wish. Okay. I want to just make a few more points then because I think, again, they're not that emphasized in the brief. One is on the gang evidence. And that is just to emphasize that to the extent there was any prejudicial effect, I think the reason for its relevance is pretty much the same as the fear and that under Carbo it was certainly proper. In terms of the prejudicial effect, I think it's important to recognize just how minimized it was. As a defendant conceded, there was no argument by the government whatsoever in closing a rebuttal about any gang testimony. As in the Easter case, which talked about the importance of minimizing any effect from gangs and citing specific ways in which to do that, that happened in this case. For example, there was no evidence about what the black society was, what kinds of activities it engaged in, any specifics that the defendants themselves had taken part in in terms of its activities, its history, the nature of it, anything like that. So I think those are important things to keep in mind. Does it make any difference that the offense was completed or not completed as charged in the indictment? They seem to argue that if it's a completed offense, fear is a factor but not on a conspiracy or attempt. No, I don't think it matters. For the reasons that I was trying to articulate but maybe didn't very effectively before, which is that, one, it is evidence, as I indicated in the brief, it's evidence of the defendant's intent, that under the Fleming case and the Davis case, the courts have been very clear that you can prove the recipient or the victim's state of mind can be circumstantial evidence of the defendant's intent. So I think it's relevant to that, to the defendant's intent to induce fear in her. Three, secondly, because fear is the means by which you can – by which you are committing an extortion, by inducing fear, it's the very means by which you are able to try to obtain money from the victim. The fact that she was afraid goes to the heart of the crime, whether it's attempt, conspiracy, or the completed crime. And finally, I think one way to show an attempt or conspiracy is to try to show the substantive crime. So the fact that even if the completed crime weren't charged, you can still put on evidence with respect to it in order to prove the attempt or the conspiracy. Finally, I just wanted to point out with respect to the kumquat tree evidence that, again, the defendant had admitted that that was proper testimony, that the victim's understanding of what the kumquat tree evidence was was properly admitted, and that appears – the quote exactly that is made by Mr. Cheng's attorney to the court is, it's significance that it had to the purported victim is what is relevant here. And so if she understood it to mean these things, certainly she could testify about it. Also, the kumquat tree, of course, is, from her understanding, one of the extortionate demands. That was the demand for more money from her understanding of what that meant. So, of course, it goes, again, directly to the element of the crime. Finally, I just want to say one word about the Speedy Trial Act. In answer to the court's question, Defendant Kwan was on bond pending the proceedings, and you can see that in the docket sheet. But in this case, it works oddly, because in this case, since he was out, he had nothing to lose by making the motion, because what he would have gotten would have been a dismissal. It would have caused a delay to make the motion, so that because he's out, there's less justification for not making the motion. If he'd been in jail waiting, then you could understand why you don't make the motion. That may be, and I think, as the court pointed out, he clearly waited, and we're not here to speculate about that. Yeah, that's what I wondered why you were talking about. The ineffective assistance claim. I'm sorry? Yeah, are you talking about the ineffective assistance claim now? Right. I mean, I think the court is right that it should be done collaterally. I just wanted to point out, I think, an error in what counsel represented, which was that in the record, it's clear that they did take a 15-minute break for the express purpose of having counsel talk to defendants about whether they wanted to waive this or not. And the court indicates that they're going to take a 15-minute recess, and then they come back, and one of the counsel says, you know, I've specifically discussed the pros and cons with this, and my defendant wants to waive. That was Mr. Chang's attorney. And the court says to Kwan's attorney, do you adopt that proffer that you've discussed it? And she says, yes. So there's clear evidence that it was discussed, and I think before this court could consider it, you know, there's not a clear – there's not a sufficient factual record to review it on direct review. And with that, I would submit the matter. Thank you, counsel. Thank you. Your Honor, I would suggest to the court that – and it's correct, it's my error that I do remember when she said that the 15 minutes were taken. What I'm suggesting to the court is that given the technical nature of this, that taking a 15-minute break to discuss an issue of this magnitude when the issue had come up in the manner which I've discussed with you, that it happened so quickly that it's unlikely that a person of Mr. Kwan's limited sophistication in law would understand the import of what had gone on, and that the issue as to whether there was a sufficient record, the entire issue regarding the attorney's addressing of the issue of the Speedy Trial Act occurred just in that proceeding. Thank you. Unless the Court has questions for Mr. Chang, I'll submit as ordered. Thank you, both. Thank you all very much. The case has now been submitted. The final
judges: Reinhardt, Siler, Hawkins